## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| PAUL GITTEMEIER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18-cv-966 SRW |
| | ) | |
| DON PHILLIPS AND DOMINIQUE | ) | |
| CUTTS,[1] | ) | |
| | ) | |
| Respondent(s). | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Petition of Paul Gittemeier for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). The matter is fully briefed. Both parties have consented to the exercise of plenary authority by a United States Magistrate Judge under 28 U.S.C. § 636(c). For the reasons set forth below, the petition for a writ of habeas corpus is denied.

## I.      BACKGROUND

In 2012, a jury convicted Petitioner of driving while intoxicated and trespass in the first degree. The Circuit Court of Warren County, Missouri found Petitioner was a chronic offender and sentenced him to 15 years in prison. Petitioner appealed his convictions to the Missouri Court of Appeals, Eastern District, who affirmed. Petitioner filed a post-conviction relief ("PCR") motion pursuant to Missouri Supreme Court Rule 29.15. The PCR motion court denied

---

[1] During the pendency of the Petition, the Board of Probation and Parole released Petitioner on parole, and he is no longer incarcerated in a correctional facility. Pursuant to Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts, Respondent is the state officer who has custody. Therefore, Don Phillips, Chairman of the Division of Probation and Parole, and Dominque Cutts, the parole officer responsible for supervising Petitioner, should be substituted in lieu of Terri Lawson as proper party respondents. *See* 28 U.S.C. § 2254, Rule 2(b), Advisory Committee Notes.

Petitioner's claims, and the appellate court affirmed the motion court's decision. Petitioner now seeks habeas relief before this Court. Petitioner is no longer incarcerated, but is under the supervision of the Missouri Division of Probation and Parole. A person currently released on parole is in custody for purposes of § 2254. *Jones v. Cunningham*, 371 U.S. 236, 241-42 (1963) (a person placed on parole is still in custody under an unexpired sentence).

The Missouri Court of Appeals, Eastern District, described the facts of Petitioner's conviction as follows:

> At approximately 5:45 a.m. on July 31, 2010, Gittemeier's neighbor, James Preis, witnessed Gittemeier riding his ATV on Preis's lawn while holding what appeared to be a bottle of vodka. Preis told Gittemeier to leave and called the police. Gittemeier drove away and then returned, when he proceeded to tip over the ATV following an apparent attempt to do "donuts" on the lawn. Preis tackled Gittemeier with the intent to hold him until police came. He testified Gittemeier smelled of alcohol, was incoherent and slurring, discussed random topics, and started to doze off. After fifteen minutes, Preis released Gittemeier, who walked home.
>
> Sheriff's Deputy Kurt Hey arrived around 6:30 a.m., and made contact with Gittemeier at his residence. Deputy Hey testified that when he interviewed Gittemeier at around 6:45 a.m., Gittemeier had bloodshot eyes, was mumbling, smelled of intoxicants, and was swaying and stumbling. Gittemeier admitted to drinking "a few" drinks and stated he had not consumed any alcohol after the incident with Preis. Deputy Hey conducted several standardized field sobriety tests, which Gittemeier failed. Deputy Hey concluded Gittemeier was intoxicated and placed him under arrest at 7:40 a.m. After he was arrested, Gittemeier again stated he had not consumed any alcohol after the incident. Gittemeier refused a breath test, and, after a warrant was obtained, a paramedic conducted two blood draws at 11:36 a.m. and 12:06 p.m. The 11:36 a.m. blood sample revealed Gittemeier had a blood alcohol content ("BAC") of 0.170% and the 12:06 a.m. sample revealed a BAC of 0.167%.
>
> The jury returned a verdict of guilty on both counts.

(ECF No. 9-5, at 2.).[2]

---

[2] These facts are taken directly from the Court of Appeals' Memorandum affirming Petitioner's conviction on direct appeal. The Court presumes a state court's determination of a factual issue is correct. *See* 28 U.S.C. § 2254(e).

## II.   STANDARD

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]n a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).

Federal courts may not grant habeas relief on a claim that has been decided on the merits in State court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result." *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's

3

presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387

F.3d 785, 790-791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Wood*

*v. Allen*, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the

state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 180-81

(2011). Clear and convincing evidence that state court factual findings lack evidentiary support is

required to grant habeas relief. 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

## III.    DISCUSSION

Gittemeier asserts eight grounds for relief in his petition: (1) he was denied his rights

under the Fifth and Fourteenth Amendments when the trial court overruled his motion for

judgment of acquittal, or in the alternative motion for new trial; (2) he received ineffective

assistance of counsel when his trial counsel failed to file a motion to suppress evidence seized as

a result of a warrantless entry and search of his home; (3) he received ineffective assistance of

counsel when his trial counsel failed to file a motion to suppress evidence seized as a result of an

invalid search warrant; (4) he received ineffective assistance of counsel when his trial counsel

failed to impeach the State's witness, James Preis; (5) he received ineffective assistance of

counsel when his trial counsel failed to properly endorse his expert, Joseph Citron, to testify as to

field sobriety tests; (6) he received ineffective assistance of counsel when his trial counsel failed

to file a motion in limine to exclude the results of the BAC tests; (7) he received ineffective

assistance of counsel when his trial counsel failed to request a continuance to test a digital audio

recording; and (8) he received ineffective assistance of counsel when his trial counsel did not

object to Deputy Hey's testimony about the dispatcher's hearsay statements.

A.      **Ground One**

In his first ground for relief, Petitioner asserts he was denied due process of law, a

fundamentally fair trial, and proof beyond a reasonable doubt under the Fifth and Fourteenth

Amendments when the trial court overruled his motion for judgment of acquittal, or in the

alternative, new trial. Petitioner argues the evidence at trial was insufficient to demonstrate he

was guilty while driving while intoxicated. Petitioner raised this claim on direct appeal, so it is

not procedurally defaulted.

For sufficient evidence to support a criminal conviction, the Fourteenth Amendment's

Due Process clause requires "evidence necessary to convince a trier of fact beyond a reasonable

doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316

(1979). "The evidence is sufficient to support a conviction whenever, 'after viewing the evidence

in the light most favorable to the prosecution, *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt.'" *Parker v. Matthews*, 567 U.S. 37,

43 (2012) (per curiam) (emphasis in original) (quoting *Jackson*, 443 U.S. at 319). This standard

"gives full play to the responsibility of the trier of fact . . . to resolve conflicts in the testimony, to

weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."

*Jackson*, 443 U.S. at 319.

In habeas proceedings, AEDPA "imposes a highly deferential standard for evaluating

state-court rulings, and demands that state-court decisions be given the benefit of the doubt."

*Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted). A

federal habeas court "may not overturn a state court decision rejecting a sufficiency of the

evidence challenge simply because the federal court disagrees with the state court." *Cavazos v.

Smith*, 565 U.S. 1, 2 (2011) (per curiam). Rather, a federal habeas court may only overturn a

state court decision on the sufficiency of the evidence "if the state court decision was 'objectively unreasonable.'" *Id*. (quoting *Renico*, 559 U.S. at 773); *accord Coleman v. Johnson*, 566 U.S. 650, 656 (2012) (per curiam) ("Johnson") (A federal habeas court may grant relief if the jury's finding of guilt, based on the evidence considered in the light most favorable to the prosecution, "was so insupportable as to fall below the threshold of bare rationality.").

While the threshold of proof in this analysis "is purely a matter of federal law," a federal habeas court looks to state law for the substantive elements of the offense. *Johnson*, 566 U.S. at 655. Importantly, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68. The Missouri Court of Appeals described the elements of driving while intoxicated as follows:

> "A person commits the crime of 'driving while intoxicated' if he operates a motor vehicle while in an intoxicated or drugged condition." Section 577.010.1 RSMo (Cum. Supp. 2010). "An intoxicated condition" is defined as being "under the influence of alcohol." Section 577.001.3 RSMo (Cum. Supp. 2005). Even in the absence of chemical tests establishing a defendant's BAC, the State may meet its burden to show intoxication through testimony of an alleged offender's physical manifestations of intoxication, such as bloodshot eyes and slurred speech, and through a defendant's difficulty performing the field sobriety tests. *State v. Knifong*, 53 S.W.3d 188, 193-94 (Mo. App. W.D. 2001); *see also State v. Scholl*, 114 S.W.3d 304, 307 (Mo. App. E.D. 2003).

(ECF No. 9-5, at 3).

When reviewing a state court's sufficiency of the evidence decision, a federal court "'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (per curiam) (quoting *Jackson*, 443 U.S. at 326). A federal habeas court is not permitted to make its own determination of witness credibility, for that determination is for the state court trier of fact. *Robinson v. LaFleur*, 225 F.3d 950, 954 (8th Cir. 2000). Additionally, the

testimony of a victim or an eyewitness is sufficient to sustain a conviction. *See Tibbs v. Florida*, 457 U.S. 31, 45 n.21 (1982) ("If the jury believed [the eyewitness'] story, the State's presentation was more than sufficient to satisfy due process."); *see also Loeblein v. Dormire*, 229 F.3d 724, 726 (8th Cir. 2000) ("A victim's testimony is, by itself, normally sufficient to sustain a conviction.").

In its review of Petitioner's sufficiency of the evidence claim, the Missouri Court of Appeals "accept[ed] as true all evidence supporting the jury's verdict, including all favorable inferences therefrom, and disregard[ed] all contrary evidence and negative inferences." (ECF No. 9-5, at 3). The Court of Appeals found:

> [A]lthough there was a timelag between the incident at 5:45 a.m. and when Deputy Hey interviewed Gittemeier at 6:45 a.m., the State presented sufficient evidence of Gittemeier's intoxication at the time he operated the vehicle. Preis testified Gittemeier was holding a bottle of alcohol while driving the ATV. Further, Preis testified Gittemeier smelled of alcohol while Preis attempted to restrain him; Gittemeier was incoherent and slurring; he rambled about several topics, such as his divorce, his father, and Preis's house; and he started to doze off. This evidence distinguishes the present case from [*State v. Byron*, 222 S.W.3d 338 (Mo. Ct. App. 2007)], where there was no evidence presented that the defendant had been drinking while operating a vehicle, and the only testimony concerning his condition immediately after the accident was from the defendant's father, who testified that the defendant "did not appear intoxicated."

> Gittemeier, however, challenges Preis's testimony as inconclusive proof of intoxication and argues Preis's testimony was not credible because it was motivated by his dislike of Gittemeier. The State may meet its burden of proof solely through the testimony of any witness who had reasonable opportunity to observe the defendant's physical condition. Preis's testimony of Gittemeier's condition immediately after the incident tends to show he was intoxicated at the time of driving.

> As to Gittemeier's claim that Preis's testimony was biased and thus not credible, we defer to the jury's superior position to assess the credibility of witnesses and the weight and value of their testimony. Here, evidence of a feud between the neighbors was presented to the jury, and the jury still found Preis's testimony credible.

> Moreover, in addition to Preis's testimony that Gittemeier was intoxicated when he operated the ATV at 5:45 a.m., the State introduced evidence that at 11:36 a.m. Gittemeier's BAC was 0.170%. Gittemeier argues his BAC results suggested he

drank after but not before the incident. The record, however, does not support this assertion. In addition to Preis's testimony regarding Gittemeier's intoxication, when Gittemeier first spoke with Deputy Hey, he admitted to having "a few" drinks. Although Gittemeier now contends on appeal he could have drank between the incident and his arrest, the record shows he specifically told Deputy Hey that he had not had anything to drink between the incident and his arrest. The combination of Gittemeier's admission of drinking plus his statement that he did not consume alcohol between the incident and his interview with police, constitutes sufficient evidence that Gittemeier was intoxicated while driving.

Accordingly, the State presented sufficient evidence of intoxication at the time Gittemeier operated the ATV, and thus the trial court did not err in denying his motion for JNOV or a new trial.

(ECF No. 9-5, at 3-6) (internal citations omitted).

The Court of Appeals applied the standard of review articulated in *Jackson,* and the record supports the factual findings cited by the court. James Preis, Petitioner's neighbor, testified when he first saw Petitioner driving his ATV on his lawn, he saw a fifth of vodka in Petitioner's hand. (ECF No. 9-1, at 115). When Mr. Preis pinned Petitioner to the ground after Petitioner fell from his ATV, Mr. Preis testified he smelled alcohol on Petitioner's breath, and Petitioner did not seem coherent. *Id*. at 118. Petitioner was slurring his words, and what he said made no sense to Mr. Preis. *Id*. Additionally, he testified Petitioner kept "like dozing off, closing his eyes and then, you know, not totally, but you know, kind of in and out of it a little bit." *Id*. at 119.

Deputy Hey testified when he spoke with Petitioner, Petitioner's eyes were bloodshot, he was mumbling, and "you could just tell through his voice that he may have been intoxicated." *Id*. at 151. He also testified Petitioner smelled like alcohol and stumbled when walking. *Id*. Petitioner admitted to Deputy Hey he had been drinking earlier but had not had anything to drink since driving his ATV. *Id*. at 153. Deputy Hey conducted three field sobriety tests on Petitioner, and he failed each one. *Id*. at 153-161. Petitioner's BAC was 0.170% when tested at the police station a number of hours later. *Id*. at 232. Petitioner's own expert testified if Petitioner had not

had anything to drink since the ATV incident, Petitioner's BAC at the time of the incident would have been between .240% and .275%. It was reasonable for the Court of Appeals to find this evidence sufficient to establish Petitioner was guilty of driving while intoxicated.

Petitioner argues the Court of Appeals gave too much weight to the testimony of Mr. Preis, who was engaged in an ongoing feud with Petitioner. Evidence of the feud was presented to the jury. (ECF No. 9-1, at 126-27). Determinations of witness credibility are left to the jury, not this Court. *Robinson*, 225 F.3d at 954. Petitioner also argues it was unreasonable for the Court of Appeals to ignore evidence indicating Petitioner consumed alcohol closer to the time of the blood test rather than the time he drove the ATV. The standard when reviewing a sufficiency of the evidence claim requires the Court of Appeals, and this Court, to view the evidence in the light most favorable to the prosecution. *Parker*, 567 U.S. at 43 (2012). Applying this standard, the evidence establishes Petitioner consumed alcohol before driving his ATV, not after.

The Court finds, in view of the evidence presented at trial, the decision of the Missouri Court of Appeals is neither incorrect nor an objectively unreasonable application of clearly established law. The appellate decision constitutes a reasonable determination of the facts. Ground one will be denied.

### B.    Grounds Two through Eight

Grounds two through eight are all ineffective assistance of counsel claims. The State asserts the claims are procedurally defaulted, and Petitioner cannot overcome the default. Petitioner argues he can demonstrate cause and prejudice to overcome the procedural bar under the Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. 1 (2012), because Petitioner's Rule 29.15 counsel did not raise these claims in a timely filed amended PCR motion.

"[A] state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing 28 U.S.C. § 2254(b)(1)(A)). Exhaustion requires "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A failure to exhaust remedies properly in accordance with state procedure results in procedural default of the prisoner's claims." *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) (citing *O'Sullivan*, 526 U.S. at 848)).

In Petitioner's *pro se* PCR motion, he raised one claim – his trial counsel was ineffective for failing to challenge whether an ATV is a motor vehicle under Missouri Revised Statute § 577.010. (ECF No. 9-7, at 12). After filing his *pro se* motion, the circuit court appointed Petitioner counsel. Appointed counsel moved for, and was granted, a 30-day extension of time to file an amended motion. Petitioner retained private counsel. On January 8, 2014, private counsel entered his appearance and moved for an additional 60-day extension of time to file the amended PCR motion. (ECF No. 9-7, at 4). On January 9, 2014, the motion court rescinded the appointment of counsel and granted private counsel's motion for an extension of time to file an amended PCR motion. *Id.* On March 14, 2014, private counsel filed the amended PCR motion. In his amended PCR motion Petitioner asserted 23 claims. Of grounds two through eight raised here, Petitioner raised all but ground seven in his amended PCR motion. The circuit court held an evidentiary hearing on Petitioner's amended PCR motion and denied Petitioner's amended PCR motion on all 23 claims. (ECF No. 9-7).

Petitioner appealed to the Missouri Court of Appeals, Eastern District. The Missouri Court of Appeals held Petitioner's amended PCR motion was filed after the mandatory deadline as clarified in *Stanley v. State*, 420 S.W.3d 532 (Mo. 2014). (ECF No. 9-11, at 1). However,

*Stanley* was decided on February 4, 2014 - a date between the January 9 order granting the additional 60 days to file the amended PCR motion and the filing of the amended motion on March 14, 2014.

According to the Court of Appeals, *Stanley* determined Rule 29.15(g) allows a circuit court to extend the time for filing an amended motion for only one additional period no longer than 30 days. *Id*. at 3-4. Petitioner's counsel requested and received an extension of time to file his amended motion under authority the circuit court did not have. *Id*. at 4. Therefore, Petitioner's amended PCR motion was ruled untimely. *Id*. at 5. The only claim properly before the circuit court was Petitioner's claim asserted in his *pro se* PCR motion. *Id*. at 13. However, Petitioner did not appeal the circuit court's denial of that claim, so the Court of Appeals could not consider it. *Id*.

Thus, for the purposes of this habeas, grounds two through eight are procedurally defaulted because Petitioner did not properly present them to the state court. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred."). A habeas petitioner may avoid procedural default only by showing that there was cause for the default and resulting prejudice, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case. *See Wainwright v. Sykes*, 433 U.S. 72, 87, 90–91 (1977). In order to establish cause, the petitioner must show that "some objective factor external to the defense" prevented his compliance with a state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner argues he can show cause and prejudice under the Supreme Court's decision in *Martinez*,

11

because his PCR counsel was ineffective for failing to raise his claims in a properly filed amended PCR motion.

In *Martinez*, the Supreme Court recognized a narrow exception to the general rule that counsel's errors in post-conviction proceedings do not qualify as a cause for default:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review proceeding, there was no counsel or that counsel was ineffective.

566 U.S. at 17. The Supreme Court also noted a petitioner must demonstrate the underlying ineffective assistance of trial counsel claim "is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14; *see also Isaac v. Wallace*, No. 4:13-cv-411 SNLJ-SPM, 2016 WL 855858, at *6 (E.D. Mo. Feb. 1, 2016). As the *Stanley* decision was determined after the circuit court granted private counsel's request for additional time, the Court finds there was cause external to the defense which prevented appellate review of Petitioner's PCR claims. Thus, to determine if Petitioner meets the *Martinez* exception, the Court must determine if Petitioner's underlying ineffective assistance of trial counsel claims are substantial.

In order to prevail on an ineffective-assistance-of-counsel-claim, a petitioner must meet the two-prong test established by *Strickland v. Washington*, 466 U.S. 687, 690, 694 (1984): (1) he must show that counsel's performance was so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," and (2) he must show "that the deficient performance prejudiced the defense," in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

**Ground Two**

In ground two, Petitioner asserts he received ineffective assistance of counsel because trial counsel failed to file a motion to suppress evidence seized as a result of a warrantless entry and search of his home in violation of the Fourth and Fourteenth Amendments. The warrantless entry and search to which Petitioner refers is when Deputy Hey entered Petitioner's home, located Petitioner, and eventually conducted field sobriety tests on Petitioner. Trial counsel did not file a motion to suppress the evidence acquired after the deputies enter Petitioner's home without a warrant. However, to establish his trial counsel was ineffective in failing to challenge the warrantless entry, Petitioner must "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

"[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)). The ultimate touchstone of the Fourth Amendment is "reasonableness," and the warrant requirement is subject to certain exceptions. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). "[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Id. (*quoting *Mincey v. Arizona,* 437 U.S. 385, 393–394 (1978)). One such situation is when an officer needs to enter a home without a warrant "to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Id*. "The need to protect or preserve life or avoid serious injury

is justification for what would be otherwise illegal absent an exigency or emergency." *Id.* (citations omitted).

The evidence at trial established that Deputy Hey's warrantless entry into Petitioner's home was objectively reasonable under the Fourth Amendment. Deputy Hey was dispatched to investigate an individual driving a four-wheeler on someone else's property. (ECF No. 9-1, at 143). He first went to Petitioner's house, and a woman was standing outside who explained Petitioner had been riding a four-wheeler and wrecked, and he was inside the house bleeding. *Id*. at 146. Deputy Hey then spoke with Mr. Preis about the incident and learned Petitioner had fallen off the ATV. *Id*. at 147. Mr. Preis pushed Petitioner to the ground, used force to restrain him for approximately 10 to 15 minutes and put his forearm on Petitioner's face. Deputy Hey learned that Petitioner was saying things that did not make sense, was closing his eyes, and "kind of in an out of it a little bit." *Id.* at 119. Mr. Preis had blood on the back of his shirt after the incident with Petitioner. *Id.* at 120.

The deputy returned to Petitioner's house, knocked loudly on the door, announced his presence, and asked if Petitioner was okay; however, Petitioner was nonresponsive. *Id*. at 148-49. He looked through the windows to try and see if Petitioner was okay and saw some bloody paper towels or rags and blood in the sink. *Id*. at 149. At this point, Deputy Hey called for assistance from two other officers, and they entered Petitioner's home. *Id*. at 150. They located Petitioner inside, saw he was bleeding, and asked if he was injured. *Id*. at 152-53. Petitioner responded that he was injured, and the deputies called an ambulance and paramedics responded. *Id*.

After learning that Petitioner had fallen off an ATV, seemed intoxicated, was bleeding, speaking irrationally and losing consciousness, it was reasonable for Deputy Hey to believe

Petitioner may be injured and in need of medical assistance. This information was also disclosed in the deputy's police report. (ECF No. 9-2, at 37). Therefore, Deputy Hey's warrantless entry into Petitioner's home was objectively reasonable and not a violation of the Fourth Amendment. *Brigham City*, 547 U.S. at 403.

Petitioner suggests the warrantless entry was unreasonable because almost two hours had elapsed since Mr. Preis had called police, and Deputy Hey could have easily gotten a warrant during that time. Petitioner asserts Deputy Hey did not get a warrant because he had already made up his mind to arrest Petitioner.

Petitioner's argument fails for two reasons. First, Deputy Hey's subjective intent is irrelevant. *Brigham City*, 547 U.S. at 404. The Court only considers whether the warrantless entry was *objectively* reasonable. *Id*. Second, the timing of Deputy Hey's entry does not make his entry unreasonable. In *United States v. Jones*, police officers responded to an apartment building after reports that a man had been firing shots and had retreated into an apartment. 635 F.2d 1357, 1358 (8th Cir. 1980). An hour after arriving, police entered the apartment without a warrant to ensure no one was injured or in imminent danger inside the apartment. *Id*. at 1359, 1361. The Eighth Circuit found the warrantless entry was reasonable because "[a]ny delay that occurred was primarily the result of careful police work, as the officers first sought to elicit a response from the suspect and then attempted to obtain a key in an effort to avoid a forceable entry." *Id*. at 1361-62. Similarly, in this case any delay that occurred resulted from Deputy Hey gathering information and attempting to avoid a forceable entry. As the Eighth Circuit stated in *Jones*:

> When the police have a reasonable suspicion that someone is injured or that the public safety is in jeopardy, but refrain from taking immediate action in an effort to confirm or deny the suspicion, and then act once they have received no indication that the danger has been dissipated, the waiting period does not defeat the applicable exception to the warrant rule.

*Id*. at 1362.

Deputy Hey's warrantless entry into Petitioner's home did not violate the Fourth Amendment. Petitioner cannot establish his counsel was ineffective for failing to raise a meritless claim, nor can he establish he was prejudiced by the failure to raise the claim. *See Rainer v. Kelley*, 865 F.3d 1035, 1045 (8th Cir. 2017). Petitioner's claim for ineffective assistance of trial counsel on this ground lacks merit; therefore, it cannot be considered a "substantial" claim under *Martinez*. 566 U.S. at 17. Petitioner fails to show cause and prejudice for the procedural default of this claim, and the Court must dismiss it.

**Ground Three**

In ground three, Petitioner asserts he received ineffective assistance of counsel when trial counsel failed to file a motion to suppress evidence seized as a result of an invalid search warrant in violation of the Fourth and Fourteenth Amendments. He argues the search warrant to take his blood to determine his BAC lacked probable cause because before interviewing Petitioner, Deputy Hey told the police dispatcher he was going to arrest Petitioner for a DWI and likely do a blood draw. He also argues the search warrant was drafted with a reckless disregard for the truth because Deputy Hey swore to an affidavit for the search warrant at 10:20 a.m. that included observations that reportedly took place ten minutes later at 10:30 a.m.

To establish his trial counsel was ineffective in failing to challenge the search warrant, Petitioner must "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman*, 477 U.S. at 375. Petitioner cannot do so.

To void a search warrant under *Franks v. Delaware*, 438 U.S. 154 (1978), as Petitioner asserts his trial counsel should have sought to do here, a defendant must show that "(1) the affiant included in the warrant affidavit 'a false statement knowingly and intentionally, or with

16

reckless disregard for the truth,' and (2) 'the affidavit's remaining content is insufficient to

establish probable cause.'" *United States v. Finley*, 612 F.3d 998, 1002 (8th Cir. 2010) (quoting

*Franks*, 438 U.S. at 155-56). "To prevail, a defendant must show more than negligence or

innocent mistake." *Id*. In neither his petition nor his reply does Petitioner establish Deputy Hey's

statement in the affidavit that he had last observed Petitioner at 10:30 a.m., when he swore to the

affidavit at 10:20 a.m., was anything more than an innocent mistake incorrectly noting the time.

He provides no evidence showing Deputy Hey included a false statement knowingly and

intentionally, or with reckless disregard for the truth.

Even if the incorrect time for the deputies' last observation of intoxication were redacted,

the search warrant would still contain probable cause. Probable cause is established when,

considering the totality of the circumstances, "there is a fair probability evidence of a crime will

be found in a particular place." *United States v. Knutson*, 967 F.3d 754, 758 (8th Cir. 2020)

(quoting *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016)). "The determination of

whether or not probable cause exists to issue a search warrant is to be based upon a common-

sense reading of the entire affidavit." *United States v. Seidel*, 677 F.3d 334, 338 (8th Cir. 2012)

(quoting *United States v. Sumpter*, 669 F.2d 1215, 1218 (8th Cir. 1982)). Deputy Hey's affidavit

in support of the search warrant to take Petitioner's blood sample, includes the following

summary of facts in support of probable cause:

> Victim: James Preis observed Paul Gittemeier operating an ATV on his property in
> Warren County, James Preis observed Paul Gittemeier with a large alcoholic
> beverage in his hand while operating the ATV. I conducted three field sobriety tests
> on Paul Gittemeier at which time I observed Gittemeier have difficulty maintaining
> his balance while walking and sway from side to side while standing. Gittemeier
> had a strong odor of intoxicating beverage emitting from his breath while speaking.
> Paul Gittemeier advised he had been drinking and refused a breath test.

(ECF No. 3, at 3-4). Based on Mr. Preis's observations of Petitioner, Deputy Hey's own

observations of Petitioner during the field sobriety tests, and Petitioner's own statement that he

17

had been drinking, there is a fair probability evidence of Petitioner's crime of driving while intoxicated would be found in his body and blood, i.e. his BAC would be above the legal limit. Thus, probable cause existed for issuance of the search warrant.

Petitioner has not established the search warrant was drafted with a reckless disregard for the truth or the search warrant lacked probable cause. Petitioner cannot establish his trial counsel was ineffective for failing to file a motion to suppress the results of the search warrant, or that he was prejudiced by his attorney's actions. Petitioner's claim for ineffective assistance of trial counsel on this ground lacks merit; therefore, it cannot be considered a "substantial" claim under *Martinez*. 566 U.S. at 17. Petitioner fails to show cause and prejudice for the procedural default of this claim, and the Court must dismiss it.

**Ground Four**

In his fourth ground for relief, Petitioner claims he received ineffective assistance of counsel when his trial counsel failed to impeach Mr. Preis with available evidence. Petitioner argues his counsel should have impeached Mr. Preis with a recording from Deputy Hey, wherein Mr. Preis admitted to police he held Petitioner on the ground, gave him a couple of "elbows," and hit him a couple of times. Petitioner also argues his trial counsel failed to investigate and obtain evidence of Petitioner's injuries after he was attacked and beaten by Mr. Preis, specifically Petitioner's black eye, swollen head, or his broken clavicle.

Generally, cross-examination techniques are left to the professional discretion of counsel and are virtually unchallengeable. *United States v. Villalpando*, 259 F.3d 934, 939 (8th Cir. 2001). "The Eighth Circuit has found constitutionally deficient performance of trial counsel based on ineffective cross-examination where counsel allowed inadmissible devastating evidence before the jury or when counsel failed to cross-examine a witness who made grossly inconsistent

18

prior statements." *Ford v. United States*, 917 F.3d 1015, 1023 (8th Cir. 2019) (quoting *United States v. Orr*, 636 F.3d 944, 952 (8th Cir. 2011)). A failure to impeach only constitutes ineffective assistance of counsel when "there is a reasonable probability that, absent counsel's failure, the jury would have had reasonable doubt of the petitioner's guilt." *Orr*, 636 F.3d at 952.

Mr. Preis testified when Petitioner attempted to get back on his ATV after falling off of it, Mr. Preis grabbed him and put him on the ground to hold him until the police arrived. (ECF No. 9-1, at 117). He grabbed Petitioner by the shirt, put him on the ground, laid on top of him, and put his forearm across Petitioner's face. *Id*. at 117-118. Mr. Preis held Petitioner on the ground for 10 to 15 minutes, and during that time, Petitioner would try to stand, but Mr. Preis would force him back down. *Id*. at 118. Mr. Preis testified Petitioner scratched him on the back during this exchange. *Id*. Eventually, Mr. Preis let Petitioner free, and Petitioner returned to his own home. *Id*. at 119.

On cross-examination, Petitioner's trial counsel asked Mr. Preis if he used force to subdue Petitioner to which Mr. Preis responded, "Not very much." *Id*. at 122. Counsel asked Mr. Preis if he used his elbows, or held his elbows over Petitioner's throat or head. *Id*. Mr. Preis responded that he did not, but he held his forearm across Petitioner's face. *Id*. at 122-23. Counsel asked if Mr. Preis hit Petitioner a number of times, which Mr. Preis denied. *Id*. at 123. When counsel asked what force Mr. Preis used to subdue Petitioner, Mr. Preis responded, "I basically just laid on top of him and every time he tried to get up I just put pressure on his face with my forearm." *Id*. Mr. Preis admitted he removed Petitioner from the ATV when the ATV was tipped onto two wheels and pushed him to the ground. *Id*. at 125. Counsel never questioned Mr. Preis about his statements on Deputy Hey's recording or attempted to introduce those statements into evidence.

Even if the Court assumes Petitioner's trial counsel was ineffective for failing to impeach Mr. Preis with the recording of his prior statements, or with photographs of Petitioner's injuries, Petitioner's claim for ineffective assistance of counsel still fails because he has not established prejudice. He has not shown "there is a reasonable probability that, absent counsel's failure, the jury would have had reasonable doubt of the petitioner's guilt." *Orr*, 636 F.3d at 952. The State presented overwhelming evidence at trial of Petitioner's guilt. Petitioner admitted to Deputy Hey he had been driving the four-wheeler. He did not have anything to drink since returning home, but he had been drinking earlier. Deputy Hey observed Petitioner with bloodshot eyes, smelling of alcohol, stumbling, and swaying from side to side while standing. Petitioner failed three field sobriety tests conducted by Deputy Hey. His BAC, several hours after the incident, was 0.170% and 0.167%. Thus, even if Petitioner's counsel had more successfully impeached Mr. Preis, the jury would not have had reasonable doubt of Petitioner's guilt.

Petitioner cannot establish prejudice for his ineffective assistance of trial counsel claim on this ground, and his claim lacks merit. Therefore, it cannot be considered a "substantial" claim under *Martinez*. 566 U.S. at 17. Petitioner fails to show cause and prejudice for the procedural default of this claim, and the Court must dismiss it.

**Ground Five**

In his fifth ground for relief, Petitioner asserts he received ineffective assistance of counsel when his trial counsel failed to properly endorse his defense expert, Joseph Citron, to testify as to field sobriety tests. Petitioner's trial counsel filed an "Endorsement of Witness" prior to trial that stated Mr. Citron would be Petitioner's expert "for purposes of BAC level at time of arrest and incident." (ECF No. 9-2, at 76). After oral arguments from the parties, the trial judge limited Mr. Citron's testimony to BAC matters and excluded any testimony on field sobriety

20

tests. (ECF No. 9-1, at 23). At the hearing on Petitioner's PCR motion, Petitioner's trial counsel testified he thought the endorsement was broad enough to cover field sobriety tests; he thought an endorsement for testimony of BAC could also include testimony on field sobriety tests. (ECF No. 9-6, at 49).

The Court cannot say Petitioner's trial counsel filed the best possible expert witness endorsement. "[T]actical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance." *United States v. Ortiz Oliveras*, 717 F.2d 1, 3 (1st Cir. 1983). "Only where a defense decision is completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy, is further review into counsel's competence required." *Id.* at 4. Furthermore, a petitioner must show more than just a mistake by his lawyer, "the mistake, if there is one, must 'undermine[] our confidence in the outcome of the proceeding.'" *Montanye v. United States*, 77 F.3d 226, 230 (8th Cir. 1996) (quoting *Thompson v. United States*, 61 F.3d 586, 587 (8th Cir. 1995)). The Court's confidence in the outcome of Petitioner's trial is not undermined by trial counsel's mistake. As the Eighth Circuit stated, "this is a hard sell; our confidence is not easily undermined." *Id.*

With hindsight, Petitioner's counsel should have endorsed Mr. Citron to testify on BAC and field sobriety tests. However, as *Strickland* instructs, "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." 466 U.S. at 689. Furthermore, Petitioner does not establish he was prejudiced by this decision. As stated in Petitioner's brief, "the field sobriety tests served as an additional piece of evidence that the jury was allowed to consider." (ECF No. 1, at 29). This was not the only piece of evidence of Petitioner's guilt. Between Mr. Preis's and Deputy Hey's

personal observations of Petitioner's behavior and Petitioner's BAC levels, the results of the trial would not have been any different even if trial counsel had properly endorsed Mr. Citron.

Petitioner's ineffective assistance of trial counsel claim on ground five lacks merit; it cannot be considered a "substantial" claim under *Martinez*. 566 U.S. at 17. Petitioner fails to show cause and prejudice for the procedural default of this claim, and the Court must dismiss it.

**Ground Six**

In his sixth ground for relief, Petitioner asserts he received ineffective assistance of counsel when his trial counsel failed to file a motion in limine to exclude or object to the results of the BAC tests because they were not performed in compliance with Missouri Revised Statute § 577.029. There was no evidence the paramedic who drew the blood used a nonalcoholic swab. In his brief, Petitioner relies on cases from 1988 and 2004, and the language from a prior version of the statute.[3] The version of the statute effective from 2009 until 2016, required a licensed physician, registered nurse, or trained medical technician to withdraw the blood, and that "only a previously unused sterile needle and sterile vessel shall be utilized and the withdrawal shall otherwise be in strict accord with accepted medical practices." Mo. Rev. Stat. § 577.029 (2009). The statute did not require use of a nonalcoholic swab. Thus, Petitioner's counsel was not ineffective for failing to seek to exclude Petitioner's BAC on this ground. It would have been a meritless challenge of the evidence.

Petitioner's ineffective assistance of trial counsel claim on ground six lacks merit, and it cannot be considered a "substantial" claim under *Martinez*. 566 U.S. at 17. Petitioner fails to show cause and prejudice for the procedural default of this claim, and the Court must dismiss it.

---

[3] Petitioner cites to *State v. Setter*, 763 S.W.2d 228, 230 (Mo. Ct. App. 1988) and *Clark v. Dir. of Revenue*, 132 S.W.3d 272, 276 (Mo. Ct. App. 2004).

**Ground Seven**

In his seventh ground for relief, Petitioner asserts he received ineffective assistance of counsel when trial counsel did not request a continuance to test the recording provided by Deputy Hey. According to Petitioner, the State provided the recording the night before trial, so his counsel did not have time to review and analyze its contents. Petitioner apparently told his counsel he believed the recording had been altered to remove statements favorable to Petitioner. Petitioner argues a reasonably competent attorney would have requested a continuance and sought to test the recording for accuracy and completeness.

Petitioner's claim fails because he has not shown what prejudice he suffered from the failure to seek a continuance. Nor did Petitioner establish any scientific basis suggesting the recording had in fact been altered. In his Petition, he argues, "if trial counsel had requested a continuance and had Deputy Hey's audio recording examined, there is a reasonable probability that the outcome of the trial would have been different." (ECF No. 1, at 34). However, he provides no specific facts as to how this recording would have undermined the evidence presented at trial so as to cause a different result. A petitioner must support his claims with specific allegations, and Petitioner has not done so here. *See Smith v. United States*, 677 F.2d 39, 41 (8th Cir. 1982) ("This claim is merely a conclusory allegation, unsupported by specifics. As such, it was a proper subject for summary dismissal.").

Petitioner has failed to establish this ground for relief has any merit; therefore, it cannot be considered a "substantial" claim under *Martinez*. 566 U.S. at 17. Petitioner fails to show cause and prejudice for the procedural default of this claim, and the Court must dismiss it.

**Ground Eight**

In his eighth ground for relief, Petitioner asserts he received ineffective assistance of counsel when his counsel failed to object to Deputy Hey's testimony about the police dispatcher's hearsay statements. Petitioner argues the statements were outcome-determinative, and the statements made by the dispatcher before Deputy Hey investigated prejudiced Petitioner in the eyes of the jury, leading them to believe he had already committed a crime.

At trial, Deputy Hey testified he was sent to respond to a call reporting a peace disturbance, trespassing, and a person driving a four-wheeler on someone else's property. (ECF No. 9-1, at 142). The prosecutor asked, "What information were you given when the first call came in? What'd the dispatcher tell you?" *Id*. at 143. Deputy Hey responded, "I believe it was along the lines of that there was a gentleman riding a four-wheeler on his property and then there was more information that came in as I was on my way there." *Id*. The prosecutor also asked Deputy Hey what information he received from the dispatcher between his first call and the time he arrived. *Id*. at 144. Deputy Hey responded, "before I arrived one of the secondary dispatch information calls that was given to use was that the gentleman had wrecked, that the victim was actually restraining the subject because he had attempted to run him over with his four-wheeler." *Id*. Deputy Hey then testified that he was told Petitioner was walking home. *Id*.

An out-of-court statement offered to explain subsequent police conduct is not hearsay. *State v. Douglas*, 131 S.W.3d 818, 824 (Mo. Ct. App. 2004). When a statement goes beyond what is necessary to explain the subsequent police conduct, it is hearsay. *Id*. Deputy Hey's statements about what dispatch told him were necessary to explain his subsequent conduct. Dispatch told him Petitioner had wrecked his ATV and was walking home. Deputy Hey then

responded first to Petitioner's house rather than Mr. Preis's. It also explains his subsequent concerns that Petitioner was injured.

Even if the statements were hearsay, Petitioner cannot show he was prejudiced by his counsel's failure to object to the statements because when the jury heard the statements, it had already heard Mr. Preis's testimony describing how Petitioner had almost hit him with the ATV and that Mr. Preis then attempted to restrain him until police came, eventually letting Petitioner go home. Petitioner argues the statements led the jury to believe he had committed a crime before it was investigated. However, the statements made no mention of Petitioner being drunk while driving the ATV. The Court does not find these statements prejudiced Petitioner.

Petitioner failed to establish this ground for relief has any merit; therefore, it cannot be considered a "substantial" claim under *Martinez*. 566 U.S. at 17. Petitioner fails to show cause and prejudice for the procedural default of this claim, and the Court must dismiss it.

Grounds two through eight of the Petition are procedurally defaulted. To overcome the procedural default, Petitioner needed to establish he received ineffective assistance of counsel from his PCR counsel under *Martinez*. To do so, he had to establish that his underlying ineffective assistance of trial counsel claims were substantial, that they had some merit. He has been unable to do so. Therefore, grounds two through eight of his Petition remain procedurally defaulted, and the Court must dismiss them on that basis.

## C.     Request for an Evidentiary Hearing

Petitioner's request for an evidentiary hearing will be denied. Generally, an evidentiary hearing is within a habeas court's discretion, as limited by statutory restrictions set forth in the AEDPA. *See Schriro v. Landrigan*, 550 U.S. 465, 473–75 (2007); 28 U.S.C. § 2254(e)(2). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a

hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro*, 550 U.S. at 474. In addition, a federal habeas court must consider "the deferential standards" under the AEDPA that "control whether to grant habeas relief." *Id.* A habeas court need not hold an evidentiary hearing "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief." *Id.* (internal quotation marks and citation omitted). Having considered all of these matters, the Court does not find an evidentiary hearing is appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition of Paul Gittemeier for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Paul Gittemeier's Petition is **DISMISSED, with prejudice**. Petitioner has not made a substantial showing of a denial of a constitutional right, and this Court will not issue a Certificate of Appealability. 28 U.S.C. § 2253(c)(2). A separate judgment in accord with this Order is entered on this same date.

So Ordered this 27th day of January, 2021.

*/s/ Stephen R. Welby*
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**